FILED

2010 SEP 15  PM 2: 11

CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2009 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>                    v.<br><br>ENRIQUE FAUSTINO AGUILAR<br>NORIEGA,<br>        and<br>ANGELA MARIA GOMEZ AGUILAR,<br>     aka, "Angela Maria<br>     Gomez Aguilar," "Angela<br>     Maria Cepeda Gomez<br>     Aguilar," "Angela Gomez<br>     Cepeda,"<br><br>                    Defendants. | CR No. 10-  **CR10  1031**<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy;<br>15 U.S.C. § 78dd-2: Foreign<br>Corrupt Practices Act; 18 U.S.C.<br>§ 1956(h): Conspiracy to Launder<br>Monetary Instruments; 18 U.S.C.<br>§ 1956(a)(1)(B)(i): Money<br>Laundering; 18 U.S.C. § 2:<br>Aiding and Abetting and Causing<br>Acts To Be Done; 18 U.S.C. §<br>981(a)(1)(C), 21 U.S.C. § 853,<br>and 28 U.S.C. § 2461(c):<br>Criminal Forfeiture; 18 U.S.C.<br>§ 982(a)(1) and 21 U.S.C. § 853:<br>Criminal Forfeiture] |

The Grand Jury charges:

<u>INTRODUCTORY ALLEGATIONS</u>

At all times relevant to this Indictment:

A.    RELEVANT STATUTES

1.    The Foreign Corrupt Practices Act of 1977 ("FCPA"), as

amended, Title 15, United States Code, Sections 78dd-2, *et seq.*,

DMM:dmm
NJM:njm

1    was enacted by Congress for the purpose of, among other things,

2    making it unlawful for certain persons and business entities

3    defined as "domestic concerns," or officers, employees, or agents

4    of those domestic concerns, to act corruptly in furtherance of an

5    offer, promise, authorization, or payment of money or anything of

6    value to a foreign government official for the purpose of

7    securing any improper advantage, or of obtaining or retaining

8    business for and with, or directing business to, any person.

9        2.    Article 222 of the Federal Penal Code of the United

10   Mexican States ("Mexico") prohibited a public servant from

11   soliciting or receiving money or gifts for himself or another, or

12   accepting a promise, in exchange for an act or omission, whether

13   lawful or unlawful, in relation to his public duties.  Article

14   222 also prohibited any person from giving or offering money or

15   gifts in order for any public servant to commit an act or

16   omission, whether lawful or unlawful, in relation to his public

17   duties.

18   B.   RELEVANT PERSONS AND ENTITIES

19       3.    Comisión Federal de Electricidad ("CFE") was an

20   electric utility company owned by Mexico.  During the time period

21   relevant to this Indictment, CFE was responsible for supplying

22   electricity to all of Mexico other than Mexico City.  CFE

23   contracted with Mexican and foreign companies for goods and

24   services to help supply electricity services to its customers.

25       4.    Official 1 was a Mexican citizen who held a senior

26   level position at CFE.  Official 1 became the Sub-Director of

27   Generation for CFE in 2002 and the Director of Operations in

28   2007.  Official 1's position at CFE made him a "foreign official"

-2-

1    as that term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(2).

2        5.    Official 2 was a Mexican citizen who also held a senior

3    level position at CFE.  Official 2 was the Director of Operations

4    at CFE until that position was taken over by Official 1 in 2007.

5    Official 2's position at CFE made him a "foreign official" as

6    that term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(2).

7        6.    Company LM was a privately held company incorporated in

8    California and headquartered in Azusa, California.  Company LM

9    manufactured emergency restoration systems ("ERSs") and other

10   equipment that was used by electrical utility companies.  Company

11   LM maintained several bank accounts at U.S. banks, including

12   Preferred Bank.  Many of Company LM's clients were foreign,

13   state-owned utilities, including CFE, which was one of Company

14   LM's most significant customers.  Company LM conducted business

15   in a number of its foreign markets through sales representatives.

16   In light of the foregoing, Company LM was a "domestic concern" as

17   that term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).

18       7.    President KL was the President of Company LM.  In that

19   position, President KL had an ownership interest in Company LM

20   and had ultimate authority over all of Company LM's operations.

21   President KL also had signatory authority over Company LM's bank

22   accounts.  President KL was a citizen of the United States.  In

23   light of the foregoing, President KL was a "domestic concern" and

24   an officer, employee, and agent of a domestic concern, as those

25   terms are defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).

26       8.    Vice President SL was the Vice President and Chief

27   Financial Officer of Company LM.  In that position, Vice

28   President SL controlled Company LM's finances and had signatory

-3-

1  authority over Company LM's bank accounts.  Vice President SL was
2  also a citizen of the United States.  In light of the foregoing,
3  Vice President SL was a "domestic concern" and an officer,
4  employee, and agent of a domestic concern, as those terms are
5  defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).

6      9.    Grupo Internacional De Asesores S.A. ("Grupo") was a
7  company incorporated in Panama and headquartered in Mexico.
8  Grupo maintained a brokerage account in Houston, Texas at Global
9  Financial Services, Inc. ("Global Financial").  Grupo's purported
10 business was to provide sales representation services for
11 companies like Company LM that had business with CFE.  Grupo was
12 Company LM's sales representative in Mexico and received a
13 percentage of the revenue Company LM received from its contracts
14 with CFE.  Company LM obtained multiple contracts with CFE while
15 using Grupo as its sales representative.  In light of the
16 foregoing, Grupo was an agent of a domestic concern, as those
17 terms are defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).

18     10.   Defendant ENRIQUE FAUSTINO AGUILAR NORIEGA ("ENRIQUE
19 AGUILAR") was born in Mexico and was a lawful permanent resident
20 of the United States.  Defendant ENRIQUE AGUILAR was a Director
21 of Grupo and was hired by Company LM to obtain contracts from
22 CFE.  In light of the foregoing, defendant ENRIQUE AGUILAR was a
23 "domestic concern" and an agent of a domestic concern as those
24 terms are defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).

25     11.   Defendant ANGELA MARIA GOMEZ AGUILAR, also known as
26 ("aka") "Angela Maria Gomez Aguilar," "Angela Maria Cepeda Gomez
27 Aguilar," "Angela Gomez Cepeda" ("ANGELA AGUILAR"), was a citizen
28 of Mexico.  Defendant ANGELA AGUILAR served as an Officer and a

1  Director of Grupo.  In that position, defendant ANGELA AGUILAR
2  managed Grupo's finances and was the sole signatory on Grupo's
3  Global Financial brokerage account.

4       12.   Sorvill International S.A. ("Sorvill") was a company
5  incorporated in Panama and headquartered in Mexico.  Sorvill
6  maintained bank accounts in Germany and Switzerland.  Like Grupo,
7  Sorvill's purported business was to provide sales representation
8  for companies that had business with CFE.  Defendant ENRIQUE
9  AGUILAR was also the Director of Sorvill, and defendants ENRIQUE
10 AGUILAR and ANGELA AGUILAR both had signatory authority over
11 Sorvill's bank accounts.
12 //
13 //

COUNT ONE

[18 U.S.C. § 371]

1.   The Grand Jury incorporates and realleges the allegations contained in paragraphs 1 through 12 in the Introductory Allegations above as though fully set forth in their entirety here.

A.   THE OBJECT OF THE CONSPIRACY

2.   Beginning in or around February 2002 and continuing through in or around March 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendant ENRIQUE AGUILAR, together with co-conspirators President KL, Vice President SL, Company LM, and others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to commit the following offense against the United States:

To willfully make use of mails and means and instrumentalities of interstate commerce, corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to any foreign official and any person while knowing that all or a portion of such money and thing of value would be and had been offered, given, and promised, directly and indirectly, to any foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in his official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his influence with a foreign government and instrumentalities

-6-

1   thereof to affect and influence acts and decisions of such

2   government and instrumentalities, in order to assist defendant

3   ENRIQUE AGUILAR, Grupo, co-conspirators President KL, Vice

4   President SL, Company LM, and others in obtaining and retaining

5   business for and with, and directing business to, Company LM, in

6   violation of Title 15, United States Code, Sections 78dd-2(a).

7   B.   THE MANNER AND MEANS OF THE CONSPIRACY

8        3.   The object of the conspiracy was carried out, and was

9   to be carried out, in substance, as follows:

10       a.   Defendant ENRIQUE AGUILAR would contact co-

11  conspirators President KL and Vice President SL and offer to

12  become Company LM's sales representative in Mexico in exchange

13  for a thirty percent commission on all of the goods and services

14  Company LM sold to CFE.

15       b.   Co-conspirators President KL and Vice President

16  SL would agree to pay defendant ENRIQUE AGUILAR a thirty percent

17  commission into Grupo's brokerage account at Global Financial,

18  even though it was significantly higher than the commission

19  Company LM had paid to its previous sales representative in

20  Mexico, while knowing defendant ENRIQUE AGUILAR had a close

21  personal relationship with Official 1 and would use all or a

22  portion of the thirty percent commission to pay Official 1 and

23  others bribes in exchange for CFE awarding Company LM contracts.

24       c.   Co-conspirator Vice President SL would increase

25  the costs of the goods and services Company LM sold to CFE by

26  thirty percent to ensure that the added cost of paying defendant

27  ENRIQUE AGUILAR his thirty percent commission was absorbed by CFE

28  and not Company LM.

-7-

d.   When Company LM was awarded contracts by CFE, defendant ENRIQUE AGUILAR would cause invoices from Grupo to be submitted to Company LM totaling thirty percent of the contract price, which was the amount co-conspirators President KL and Vice President SL had agreed to pay defendant ENRIQUE AGUILAR for serving as Company LM's sales representative to CFE.

e.   In order to conceal the fact that defendant ENRIQUE AGUILAR was receiving a thirty percent commission from Company LM, defendant ENRIQUE AGUILAR would at times cause the invoices to falsely state that only half of the money owed to Grupo (that is, fifteen percent of the contract price) was a commission and that the remaining fifteen percent was for other services purportedly rendered by Grupo.

f.   Co-conspirator Vice President SL would wire the money requested in the fraudulent invoices into Grupo's brokerage account at Global Financial, while knowing the invoices were fraudulent and that all or a portion of the money would be used to pay bribes to Official 1 and others at CFE.

C.   OVERT ACTS

4.   In furtherance of the conspiracy and to accomplish its object, defendant ENRIQUE AGUILAR, together with others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts, among others, in the Central District of California, and elsewhere:

*The Agreement*

Overt Act No. 1:    In or around 2002, Vice President SL entered into an agreement with defendant ENRIQUE AGUILAR on behalf of Company LM in which Company LM agreed to hire defendant

-8-

ENRIQUE AGUILAR as its sales representative in Mexico and to pay him a thirty percent commission on all of the contracts that Company LM obtained from CFE.

### *The Fraudulent Invoices*

5.   On or about the following dates, defendant ENRIQUE AGUILAR caused the following invoices to be submitted from Grupo to Company LM, fraudulently stating that Grupo had rendered various services to Company LM, which invoices coconspirator Vice President SL later paid, either in whole or in part, knowing they were fraudulent:

| Overt Act | Date | Inv. | Amount |
|---|---|---|---|
| Overt Act No. 2: | Aug. 1, 2002 | 101 | $174,326.06 |
| Overt Act No. 3: | Aug. 2, 2002 | 102 | $174,326.06 |
| Overt Act No. 4: | Sept. 8, 2002 | 111 | $84,012.11 |
| Overt Act No. 5: | Oct. 2, 2003 | 112 | $86,111.00 |
| Overt Act No. 6: | Oct. 2, 2003 | 113 | $149,663.00 |
| Overt Act No. 7: | Oct. 21, 2003 | 114 | $149,663.00 |
| Overt Act No. 8: | Oct. 31, 2003 | 116 | $84,459.00 |
| Overt Act No. 9: | Nov. 28, 2003 | 117 | $44,162.00 |
| Overt Act No. 10: | Nov. 28, 2003 | 118 | $44,162.00 |
| Overt Act No. 11: | Dec. 19, 2003 | 119 | $112,079.42 |
| Overt Act No. 12: | Dec. 19, 2003 | 120 | $112,079.42 |
| Overt Act No. 13: | Dec. 19, 2003 | 121 | $54,251.10 |
| Overt Act No. 14: | Dec. 19, 2003 | 122 | $54,251.10 |
| Overt Act No. 15: | June 25, 2004 | 123 | $53,778.00 |
| Overt Act No. 16: | Dec. 21, 2004 | 126 | $134,061.00 |
| Overt Act No. 17: | Sept. 26, 2006 | 132 | $109,879.38 |
| Overt Act No. 18: | Sept. 28, 2006 | 133 | $42,104.40 |

| Overt Act No. 19: | Oct. 25, 2006 | 134 | $92,116.74 |
| Overt Act No. 20: | Nov. 10, 2006 | 135 | $1,567,416.00 |
| Overt Act No. 21: | Nov. 21, 2006 | 137 | $1,567,416.00 |
| Overt Act No. 22: | Jan. 10, 2007 | 139 | $121,642.00 |
| Overt Act No. 23: | Jan. 17, 2007 | 140 | $100,917.00 |
| Overt Act No. 24: | Jan. 17, 2007 | 141 | $80,242.00 |
| Overt Act No. 25: | Feb. 9, 2007 | 142 | $115,879.56 |
| Overt Act No. 26: | July 2, 2007 | 143 | $15,348.50 |
| Overt Act No. 27: | Sept. 13, 2007 | 144 | $260,468.00 |
| Overt Act No. 28: | Oct. 10, 2007 | 145 | $9,155.00 |
| Overt Act No. 29: | March 28, 2008 | 148 | $230,333.00 |
| Overt Act No. 30: | March 28, 2008 | 149 | $13,078.00 |

### *The Corrupt Payments to Foreign Officials*

Overt Act No. 31:  On or about July 13, 2006, defendant ENRIQUE AGUILAR and others known and unknown to the Grand Jury caused a letter to be submitted to Global Financial authorizing the transfers of funds from Grupo's Global Financial brokerage account to pay the credit card bills for Official 1's American Express credit card "in full every month, until further notice," which included the false explanation that Official 1 was the "brother-in-law of company owner."

Overt Act No. 32:  On or about August 23, 2006, defendant ENRIQUE AGUILAR aided Official 1 in purchasing an 82-foot yacht named the *Dream Seeker* for $1,800,010, which Official 1 later accepted as the true purchaser of the yacht.

Overt Act No. 33:  On or about August 24, 2006, defendant ENRIQUE AGUILAR caused a wire transfer to South Shore Yacht Sales Trust from Sorvill's Swiss bank account in the amount of

-10-

1  approximately $360,000, as partial payment for the *Dream Seeker*

2  yacht purchased for Official 1.

3      <u>Overt Act No. 34:</u>   On or about August 28, 2006, defendant

4  ENRIQUE AGUILAR and others known and unknown to the Grand Jury

5  caused the issuance of a check to South Shore Yacht Sales Trust

6  from Grupo's Global Financial brokerage account for approximately

7  $540,000, as partial payment for the *Dream Seeker* yacht purchased

8  for Official 1.

9      <u>Overt Act No. 35:</u>   On or about September 8, 2006, defendant

10  ENRIQUE AGUILAR caused a wire transfer to South Shore Yacht Sales

11  Trust from Sorvill's Swiss bank account in the amount of

12  approximately $450,000, as partial payment for the *Dream Seeker*

13  yacht purchased for Official 1.

14      <u>Overt Act No. 36:</u>   On or about November 30, 2006, defendant

15  ENRIQUE AGUILAR and others known and unknown to the Grand Jury

16  caused a wire transfer in the amount of approximately $250,000

17  from Grupo's Global Financial brokerage account to a Banco

18  Popular account ending xx370, which falsely stated that the wire

19  transfer was going to Official 2's female relative for "payment

20  for professional services advice."

21      <u>Overt Act No. 37:</u>   In or around November 2006, defendant

22  ENRIQUE AGUILAR caused a signed International Sales

23  Representative Agreement to be submitted to Global Financial,

24  which falsely stated that Official 2's female relative was a

25  sales representative for Grupo.

26      <u>Overt Act No. 38:</u>   On or about November 30, 2006, defendant

27  ENRIQUE AGUILAR and others known and unknown to the Grand Jury

28  caused a wire transfer in the amount of approximately $250,000

from Grupo's Global Financial brokerage account to a Banco Popular account ending xx581, which falsely stated that the wire transfer was going to Official 2's male relative for "payment for professional services advice."

Overt Act No. 39:   In or around November 2006, defendant ENRIQUE AGUILAR caused a signed International Sales Representative Agreement to be submitted to Global Financial, which falsely stated that Official 2's male relative was a sales representative for Grupo.

Overt Act No. 40:   On or about February 16, 2007, defendant ENRIQUE AGUILAR and others known and unknown to the Grand Jury caused the issuance of a check to Ferrari of Beverly Hills from Groupo's Global Financial brokerage account for approximately $297,500 to purchase a 2005 Ferrari Spyder (the "Ferrari") for Official 1.

Overt Act No. 41:   In or around February 2007, defendant ENRIQUE AGUILAR and others known and unknown to the Grand Jury caused a statement of facts, which authorized Official 1 to pick up the Ferrari titled in defendant ENRIQUE AGUILAR's name, to be submitted to Ferrari of Beverly Hills.

Overt Act No. 42:   In or around March 2007, defendant ENRIQUE AGUILAR caused a car insurance policy on the Ferrari to be issued under his own name but listed Official 1 as a driver of the Ferrari on the policy.

Overt Act No. 43:   On or about March 9, 2007, defendant ENRIQUE AGUILAR caused a wire transfer in the amount of approximately $45,000 from Sorvill's Swiss bank account to a Banner Bank account number ending in xx227 to be applied to an

1   escrow on behalf of Official 1's half brother CM.

2       <u>Overt Act No. 44:</u>   On or about March 14, 2007, defendant

3   ENRIQUE AGUILAR caused a wire transfer in the amount of

4   approximately $50,000 from Sorvill's Swiss bank account to a

5   Banco Popular account number ending in xx370, which stated that

6   the transfer was going to Official 2's mother as a "consulting

7   fee."

8       <u>Overt Act No. 45:</u>   On or about March 14, 2007, defendant

9   ENRIQUE AGUILAR caused a wire transfer in the amount of

10  approximately $50,000 from Sorvill's Swiss bank account to a

11  Banco Popular account number ending in xx581, which stated that

12  the transfer was going to Official 2's brother as a "consulting

13  fee."

COUNTS TWO THROUGH FIVE

[15 U.S.C. § 78dd-2(a); 18 U.S.C. § 2]

1.   The Grand Jury incorporates and realleges the allegations contained in paragraphs 1 through 12 in the Introductory Allegations above as though fully set forth in their entirety here.

2.   On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant ENRIQUE AGUILAR, who was a domestic concern and agent of a domestic concern within the meaning of the FCPA, willfully made use of, and aided, abetted, and caused others to make use of, the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to any foreign official, and to any person, while knowing that all or a portion of the money and thing of value would be and had been be offered, given, and promised, directly and indirectly, to any foreign official for the purposes of: (i) influencing acts and decisions of such foreign official in his official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his influence with a foreign government and instrumentalities thereof to affect and influence acts and decisions of such government and instrumentalities, in order to assist defendant ENRIQUE AGUILAR, Grupo, President KL, Vice President SL, and Company LM, and others known and unknown

-14-

to the Grand Jury, in obtaining and retaining business for and
with, and directing business to Company LM, as follows:

| COUNT | DATE | MEANS AND INSTRUMENTALITIES OF INTERSTATE AND INTERNATIONAL COMMERCE |
|---|---|---|
| TWO | 11/1/2006 | Wire transfer of approximately $92,116.74 from Company LM's Preferred Bank account in California to Grupo's Global Financial brokerage account in Texas |
| THREE | 11/17/2006 | Wire transfer of approximately $1,567,416.00 from Company LM's Preferred Bank account in California to Grupo's Global Financial brokerage account in Texas |
| FOUR | 11/28/2006 | Wire transfer of approximately $1,567,416.00 from Company LM's Preferred Bank account in California to Grupo's Global Financial brokerage account in Texas |
| FIVE | 9/17/2007 | Wire transfer of approximately $260,468 from Company LM's California United Bank account in California to Grupo's Global Financial brokerage account in Texas |

-15-

COUNT SIX

[18 U.S.C. § 1956(h)]

1.    The Grand Jury incorporates and realleges the allegations contained in paragraphs 1 through 12 in the Introductory Allegations above as though fully set forth in their entirety here.

A.    THE OBJECTS OF THE CONSPIRACY

2.    From in or around 2002, through in or around March 2009, the exact dates being unknown to the Grand Jury, in Los Angeles County, in the Central District of California, and elsewhere, defendants ENRIQUE AGUILAR and ANGELA AGUILAR did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury, including Company LM, co-conspirators President KL, Vice President SL, and Grupo, to commit offenses under Title 18, United States Code, Sections 1956 and 1957, namely:

    a.    knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, to conduct financial transactions affecting interstate and foreign commerce, which financial transactions involved the proceeds of specified unlawful activity, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

-16-

b.   to knowingly transport, transmit, and transfer, and willfully cause others to transport, transmit, and transfer, monetary instruments and funds from a place in the United States to a place outside the United States, intending that each of the transactions, in whole and in part, promote the carrying on of a specified unlawful activity, in violation of Title 18, United States Code Section 1956(a)(2)(A); and

c.   to engage in a monetary transaction by, through, and to a financial institution, in and affecting interstate and international commerce, in criminally derived property that was of a value greater than $10,000.00, that is, the deposit, withdrawal, transfer and exchange of U.S. currency, funds and monetary instruments, such property having been derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

B.   THE MANNER AND MEANS OF THE CONSPIRACY

3.   The objects of the conspiracy were carried out, and to be carried out, in substance, as follows:

4.   Defendant ENRIQUE AGUILAR, co-conspirators President KL and Vice President SL, and others known and unknown to the Grand Jury would cause bribes to Official 1 and Official 2 to be paid into Grupo's brokerage account at Global Financial, in violation of the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-2, and in violation of the criminal bribery laws of Mexico, Article 222 of the Federal Penal Code of the United Mexican States.

5.   Defendants ENRIQUE AGUILAR and ANGELA AGUILAR would take a portion of the money paid to Grupo's brokerage account at

-17-

Global Financial and engage in monetary transactions designed to: (1) conceal the source of the moneys and the fact that they were bribes to Official 1 and Official 2; (2) promote the payment of bribes through international monetary transactions for the benefit of Official 1 and Official 2; and (3) engage in monetary transactions of a value greater than $10,000 using criminally derived property.

C.   OVERT ACTS

6.   In furtherance of the conspiracy and to accomplish its objects, defendants ENRIQUE AGUILAR and ANGELA AGUILAR, together with others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts, among others, in the Central District of California, and elsewhere:

Overt Act No. 1:   On or about July 13, 2006, defendant ENRIQUE AGUILAR and defendant ANGELA AGUILAR caused a letter to be submitted to Global Financial authorizing the transfers of funds from Grupo's Global Financial brokerage account to pay the credit card bills for Official 1's American Express credit card "in full every month, until further notice," which included the false explanation that Official 1 was the "brother-in-law of company owner."

Overt Act No. 2:   On or about August 23, 2006, defendant ENRIQUE AGUILAR aided Official 1 in purchasing an 82-foot yacht named the *Dream Seeker* for $1,800,010, which Official 1 later accepted as the true purchaser of the yacht.

Overt Act No. 3:   On or about August 24, 2006, defendant ENRIQUE AGUILAR caused a wire transfer to South Shore Yacht Sales Trust from Sorvill's Swiss bank account in the amount of

-18-

1   approximately $360,000, as partial payment for the *Dream Seeker*

2   yacht purchased for Official 1.

3        Overt Act No. 4:    On or about August 28, 2006, defendant

4   ENRIQUE AGUILAR and defendant ANGELA AGUILAR caused the issuance

5   of a check to South Shore Yacht Sales Trust from Grupo's Global

6   Financial brokerage account for approximately $540,000, as

7   partial payment for the *Dream Seeker* yacht purchased for Official

8   1.

9        Overt Act No. 5:    On or about September 8, 2006, defendant

10   ENRIQUE AGUILAR caused a wire transfer to South Shore Yacht Sales

11   Trust from Sorvill's Swiss bank account in the amount of

12   approximately $450,000, as partial payment for the *Dream Seeker*

13   yacht purchased for Official 1.

14        Overt Act No. 6:    On or about November 30, 2006, defendant

15   ENRIQUE AGUILAR and defendant ANGELA AGUILAR caused a wire

16   transfer in the amount of approximately $250,000 from Grupo's

17   Global Financial brokerage account to a Banco Popular account

18   ending xx370, which falsely stated that the wire transfer was

19   going to Official 2's female relative for "payment for

20   professional services advice."

21        Overt Act No. 7:    In or around November 2006, defendant

22   ENRIQUE AGUILAR caused a signed International Sales

23   Representative Agreement to be submitted to Global Financial,

24   which falsely stated that Official 2's female relative was a

25   sales representative for Grupo.

26        Overt Act No. 8:    On or about November 30, 2006, defendant

27   ENRIQUE AGUILAR and defendant ANGELA AGUILAR caused a wire

28   transfer in the amount of approximately $250,000 from Grupo's

-19-

1 Global Financial brokerage account to a Banco Popular account
2 ending xx581, which falsely stated that the wire transfer was
3 going to Official 2's male relative for "payment for professional
4 services advice."

5     Overt Act No. 9:   In or around November 2006, defendant
6 ENRIQUE AGUILAR caused a signed International Sales
7 Representative Agreement to be submitted to Global Financial,
8 which falsely stated that Official 2's male relative was a sales·
9 representative for Grupo.

10     Overt Act No. 10:   On or about February 16, 2007, defendant
11 ENRIQUE AGUILAR and defendant ANGELA AGUILAR caused the issuance
12 of a check to Ferrari of Beverly Hills from Groupo's Global
13 Financial brokerage account for approximately $297,500 to
14 purchase a 2005 Ferrari Spyder (the "Ferrari") for Official 1.

15     Overt Act No. 11:   In or around February 2007, defendant
16 ENRIQUE AGUILAR and defendant ANGELA AGUILAR caused a statement
17 of facts, which authorized Official 1 to pick up the Ferrari
18 titled in defendant ENRIQUE AGUILAR's name, to be submitted to
19 Ferrari of Beverly Hills.

20     Overt Act No. 12:   In or around March 2007, defendant
21 ENRIQUE AGUILAR caused a car insurance policy on the Ferrari to
22 be issued under his own name but listed Official 1 as a driver of
23 the Ferrari on the policy.

24     Overt Act No. 13:   On or about March 9, 2007, defendant
25 ENRIQUE AGUILAR caused a wire transfer in the amount of
26 approximately $45,000 from Sorvill's Swiss bank account to a
27 Banner Bank account number ending in xx227 to be applied to an
28 escrow on behalf of Official 1's half brother CM.

-20-

<u>Overt Act No. 14:</u>   On or about March 14, 2007, defendant ENRIQUE AGUILAR caused a wire transfer in the amount of approximately $50,000 from Sorvill's Swiss bank account to a Banco Popular account number ending in xx370, which stated that the transfer was going to Official 2's mother as a "consulting fee."

<u>Overt Act No. 15:</u>   On or about March 14, 2007, defendant ENRIQUE AGUILAR caused a wire transfer in the amount of approximately $50,000 from Sorvill's Swiss bank account to a Banco Popular account number ending in xx581, which stated that the transfer was going to Official 2's brother as a "consulting fee."

-21-

COUNT SEVEN

[18 U.S.C. § 1956(a)(1)(B)(i); 18 U.S.C. § 2]

1.   The Grand Jury incorporates and realleges the allegations contained in paragraphs 1 through 12 in the Introductory Allegations above as though fully set forth in their entirety here.

2.   On or about the following date, in Los Angeles County, in the Central District of Los Angeles, and elsewhere, defendants ENRIQUE AGUILAR and ANGELA AGUILAR, together with and aided and abetted by others known and unknown to the Grand Jury, knowing that the property involved in the financial transaction described below represented the proceeds of some form of unlawful activity, conducted, and willfully caused others to conduct, the following financial transaction affecting interstate commerce, which transaction in fact involved the proceeds of specified unlawful activity, namely, a violation of the Foreign Corrupt Practices Act and a violation of the criminal bribery laws of Mexico, as set forth in Article 222 of the Federal Penal Code of the United Mexican States, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity:

| DATE | FINANCIAL TRANSACTION |
|------|----------------------|
| 2/16/07 | The deposit of a check issued from Grupo's Global Financial brokerage account ending XX964 for approximately $297,500 into a Pacific Western Bank account ending in XX200 for the purchase of a Ferrari in Beverly Hills in California. |

NOTICE OF FORFEITURE I

[18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c); 21 U.S.C. § 853]

1.   The Grand Jury incorporates and realleges all of the allegations contained in the Introductory Allegations and Counts One through Five above as though fully set forth in their entirety here for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853.

2.   Pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853, defendant ENRIQUE AGUILAR, if convicted of any of the offenses charged in Counts One through Five of this Indictment, shall forfeit to the United States the following property:

      a.   All rights, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses, including without limitation:

          1.   Bluffview Securities, LP account ending in account number xx558;

      b.   A sum of money equal to the total amount of proceeds derived from each such offense for which defendant ENRIQUE AGUILAR is convicted, or for which defendant ENRIQUE AGUILAR may be held jointly and severally liable.

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section

-23-

2461(c), defendant ENRIQUE AGUILAR, if so convicted, shall forfeit substitute property, up to the total value of the property described in paragraph 2 above, if, by any act or omission of the defendant, the property described in paragraph 2, or any portion thereof, (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

NOTICE OF FORFEITURE II

[18 U.S.C. § 982(a)(1) and 21 U.S.C. § 853]

1.    The Grand Jury incorporates and realleges all of the allegations contained in the Introductory Allegations and Counts Six and Seven above as though fully set forth in their entirety here for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982(a)(1) and Title 21, United States Code, Section 853.

2.    Pursuant to Title 18, United States Code, Section 982(a)(1), each of defendants ENRIQUE AGUILAR and ANGELA AGUILAR convicted under Count Six and/or Count Seven of this Indictment shall forfeit to the United States the following property:

a.    All rights, title, and interest in any and all property involved in each offense committed in violation of Title 18, United States Code, Section 1956, or conspiracy to commit such offense, for which the defendant is convicted, and all property traceable to such property, including the following:

(1)  all money or other property that was the subject of each transaction in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(I) and/or 1956(h);

(2)  all commissions, fees, and other property constituting proceeds obtained as a result of those violations;

(3)  all property used in any manner or part to commit or to facilitate the commission of those violations; and

(4)  all property traceable to money or property described in this paragraph 2.a.(1) to 2.a.(3).

-25-

        b.    A sum of money equal to the total amount of money involved in each offense committed in violation of Title 18, United States Code, Section 1956, or conspiracy to commit such offense, for which the defendant is convicted.

        3.    If, as a result of any act or omission by defendants ENRIQUE AGUILAR and ANGELA AGUILAR, any of the foregoing money or property (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be subdivided without difficulty, then any other property or interests of that defendant, up to the value of the money and

//

//

property described in the preceding paragraph of this Indictment,
shall be subject to forfeiture to the United States.


A TRUE BILL


/s/
_____
Foreperson


ANDRÉ BIROTTE JR.
United States Attorney


ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

DOUGLAS M. MILLER
Assistant United States Attorney
Public Corruption & Civil Rights Section


DENIS J. McINERNEY, Chief
Fraud Section, Criminal Division
U.S. Department of Justice

NICOLA J. MRAZEK, Senior Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice